**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

| | |
|---|---|
| **IN RE: PETER SZANTO**, <br><br> Debtor, <br><br> ——————————————————— <br><br> **PETER SZANTO**, <br><br> Appellant, <br><br> v. <br><br> **CANDACE AMBORN**, Chapter 7 Trustee, <br><br> Appellee. | Case No. 3:21-cv-163-SI Lead <br> Case No. 3:21-cv-417-SI Consolidated <br><br> Bankr. Case No. 3:16-bk-33185-pcm7 <br><br> **ORDER** |

**Michael H. Simon, District Judge.**

In these consolidated bankruptcy appeals, Appellant Peter Szanto (Szanto) challenges two orders issued by the United States Bankruptcy Court for the District of Oregon (Bankruptcy Court), finding Szanto in contempt. The Bankruptcy Court ordered Szanto to sign forms relating to foreign bank accounts held at HSBC Singapore. Szanto moves this district court to enjoin the Chapter 7 Trustee (Trustee), from using the forms signed by Szanto to obtain any information or to transfer any funds from the HSBC Bank accounts.[1] For the reasons discussed below, Szanto's motion is denied.

---

[1] Szanto repeatedly references a "stay" in his reply and argues that the Court should stay the Bankruptcy case and proceedings. The Court, however, denied Szanto's motion to stay. *See*

PAGE 1 – ORDER

**BACKGROUND**

In July 2018, the Trustee, who at that time was Stephen P. Arnot, filed in the Bankruptcy Court a motion for contempt. The Trustee asserted that Szanto had transferred bankruptcy assets to foreign bank accounts in Australia and Singapore. The Bankruptcy Court found Szanto in contempt and stated the Bankruptcy Court's findings and conclusions on the record during a hearing on August 24, 2018. The Bankruptcy Court found that Szanto had transferred bankruptcy estate assets to foreign bank accounts.

On October 2, 2018, the Bankruptcy Court issued an order granting the Trustee's motion for contempt (First Contempt Order). The First Contempt Order, among other things, required Szanto to sign a form for HSBC Bank, HSBC Singapore, and HSBC Australia accounts authorizing the release of information for accounts in which Szanto has an interest and forms for the "turnover" of funds from HSBC Singapore and HSBC Australia accounts in Szanto's name solely or jointly with another. There were three forms attached to the First Contempt Order—one authorization form that was addressed to HSBC Bank, HSBC Singapore, HSBC Australia, and HSBC Foreign Exchange; one transfer form for HSBC Singapore; and one transfer form for HSBC Australia.

On August 19, 2020, the Trustee, now Candace Amborn (who replaced Mr. Arnot), filed a second motion for contempt. The Trustee asserted that Szanto failed to sign the forms for the HSBC Bank, HSBC Singapore, and HSBC Australia accounts as required in the First Contempt Order. The Bankruptcy Court held an evidentiary hearing on January 13, 2021, and granted the Trustee's motion. The Bankruptcy Court issued the Second Contempt Order on January 15,

---

Case No. 3:21-cv-163-SI, ECF 13 (issued before these cases were consolidated). Pending before the Court is Szanto's motion for a temporary restraining order. *See* Case No. 3:21-cv-417-SI, ECF 5 (filed before these cases were consolidated).

2021. The Bankruptcy Court found that Szanto had not signed the forms as required in the First Contempt Order and held Szanto in contempt of the First Contempt Order.

In the Second Contempt Order, the Bankruptcy Court ordered Szanto to sign copies of the authorization form for HSBC Bank and the transfer form for HSBC Singapore. The Second Contempt Order referenced the attached Exhibit, which contained two forms—the same authorization form as was attached to the First Contempt Order, directed to HSBC Bank, HSBC Singapore, HSBC Australia, and HSBC Foreign Exchange and the same transfer order for HSBC Singapore as was attached to the First Contempt Order. The Second Contempt Order did not include the third form from the First Contempt Order, the transfer form for HSBC Australia. The Bankruptcy Court also ordered that these signed forms be delivered from Szanto to the Trustee by January 20, 2021, using a trackable shipping method. The Bankruptcy Court further ordered that if Szanto failed to sign and deliver the forms by January 20, 2021,

> he shall be required to pay to the court, on a daily basis, a coercive sanction of $500 per day, commencing on January 21, 2021, until he signs and delivers the Forms or until further order of the court. Debtor must pay the coercive sanction through CM/ECF using the menu item entitled Pay Coercive Sanction, which will be placed on Debtor's Bankruptcy menu upon entry of this order.

ECF 5-1 at 2 (*In Re: Peter Szanto*, Bankruptcy Court Case No. 16-33185-pcm7, ECF 1058 (Jan. 15, 2021)).

The Bankruptcy Court scheduled a video conference for February 25, 2021, to determine whether Szanto signed and delivered the forms as directed and to "consider further sanctions if he has not." *Id.* The Bankruptcy Court "expressly warned" Szanto that if he failed to comply with the Bankruptcy Court's Order, Szanto "will be subject to further contempt sanctions, likely including the issuance of a warrant for his arrest by the United States Marshals Service." *Id.* at 3. Szanto appeals the Second Contempt Order in these consolidated cases. Szanto filed with the

PAGE 3 – ORDER

Bankruptcy Court a motion to stay the Second Contempt Order pending appeal. The Bankruptcy Court denied the motion, finding that Szanto had not shown that he was likely to succeed on the merits, had not shown a likelihood of irreparable harm, there would be irreparable harm to others, and the public interest did not favor a stay. ECF 5-3 (*In Re: Peter Szanto*, Bankruptcy Court Case No. 16-33185-pcm7, ECF 1068 (Jan. 21, 2021)). Szanto then filed a motion to stay with this Court. The Court denied the motion. ECF 13 (Case No. 3:21-cv-163-SI).

On February 25, 2021, the Bankruptcy Court held a hearing and issued an order concluding that Szanto had not complied with the First and Second Contempt Orders (Third Contempt Order). The Third Contempt Order stated that Szanto would be incarcerated until he signed the forms as ordered in the First and Second Contempt Orders. The Third Contempt Order attached a copy of the forms to be signed. The attached forms were the same forms as were attached to the Second Contempt Order—the authorization form and the transfer form for HSBC Singapore. The Bankruptcy Court also issued an arrest warrant for Szanto. Szanto appeals the Third Contempt Order in these consolidated cases. After the Bankruptcy Court issued the warrant for Szanto's arrest, he signed the forms.

## DISCUSSION

### A. Rule 8007

A request for "an order suspending, modifying, restoring, or granting an injunction while an appeal is pending" must ordinarily be directed to the bankruptcy court in the first instance. Fed. R. Bankr. P. 8007(a)(1)(C). If the request is instead made directly to the court where the appeal is pending, the moving party *must* "show that moving first in the bankruptcy court would be impracticable," or "if a motion was made in the bankruptcy court" must "state the court has not yet ruled on the motion, or state that the court has ruled and set out any reasons given for the ruling." Fed. R. Bankr. P. 8007(b)(2).

Szanto argues that "ordinarily" does mean always and thus he did not need to comply with Rule 8007. This argument is without merit. "Ordinarily" merely means that there are circumstances in which a moving party might meet the *requirements* of Rule 8007(b)(2)(A) and move first in the appellate court. Szanto must comply with Rule 8007.

Szanto has not satisfied the requirements of Rule 8007. Szanto asserts that the Trustee and her counsel are "antagonistic to all conceivable purposes of Title 11" and that "Judge McKittrick's focus has been on forfeiture and waiver of fundamental rights such that Appellant could be more easily separated from his money and property." Liberally construing his *pro se* filing, and considering these statements as explanations of impracticability, Szanto's claims of antagonism by the Trustee do not preclude him from filing in the Bankruptcy Court and his claim of bias by the Bankruptcy Court are insufficient to show that first moving for relief in the Bankruptcy Court as required under Rule 8007 is impracticable. *See In re Smith*, 2019 WL 2189490, at *2 (D. Colo. May 21, 2019), *appeal dismissed sub nom. In re Hook*, 816 F. App'x 269 (10th Cir. 2020) (rejecting argument that the bankruptcy court's alleged "appearance of extreme judicial hostility and bias against" the debtor demonstrated impracticability). Szanto's motion is denied for failing to comply with Rule 8007. Even if he had complied with Rule 8007, his motion would fail on the merits, as discussed below.

## B. Merits Analysis

In deciding whether to grant a motion for temporary restraining order (TRO), courts look to substantially the same factors that apply to a court's decision on whether to issue a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Defense Council, Inc.*, 555 U.S. 7, 22 (2008). A plaintiff seeking a preliminary injunction generally must show

PAGE 5 – ORDER

that: (1) the plaintiff is likely to succeed on the merits; (2) the plaintiff is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in favor of the plaintiff; and (4) that an injunction is in the public interest. *Id.* at 20.

Szanto fails to show that he meets the requirements for a TRO. He fails to show that he is likely to suffer irreparable harm. The harm argued by Szanto is that the Trustee will "loot" the separate, non-bankruptcy funds from the HSBC Singapore account. Szanto repeatedly states that the funds in the HSBC Singapore account do not belong in the bankruptcy estate because they are the separate property of his late wife. Szanto claims that the money came from his wife's book proceeds and one (or two) million dollars came from the Israeli Defense Fund to pay for his wife's medical costs. Interestingly, although Szanto chastises the Trustee for purportedly failing to provide the Bankruptcy Court with anything "tangible to serve as proof" that Szanto has bankruptcy estate funds in foreign bank accounts, stating that "[d]emonstrative proof is important here" and that more is required than "speculative hearsay," Szanto does not provide any documentary or tangible proof of the purported book proceeds, Israeli Defense Fund payments, or separate account status of the HSBC Singapore account. The Court previously pointed this out to Szanto, but he has not filed any such evidence with the Court. He provides nothing but his unsworn statement that the funds are separate, non-bankruptcy property.

The Bankruptcy Court previously discussed that Szanto fails to show irreparable harm because he has the opportunity to challenge in the bankruptcy whether the funds in the HSBC Singapore (or Australia) accounts belong in the bankruptcy estate. This Court found that the Bankruptcy Court's analysis was not an abuse of discretion. Szanto's concern, however, is that the Trustee will mishandle the funds before the bankruptcy is fully litigated. The Court suggested in its Orders denying Szanto's previous motions that Szanto move the Bankruptcy Court for an

order that any funds seized from the foreign accounts be held in trust by the Clerk of the Court until a final determination, including all appeals, about whether the funds, or any portion of them, belong in the bankruptcy estate. The Court did so not because of evidence of wrongdoing by the Trustee, but because of the Court's recognition that Szanto held a deep distrust of the Trustee and was facing potential incarceration as a sanction for not signing the forms.

Szanto did not inform the Court whether he made the suggested motion or whether there was any related order by the Bankruptcy Court. The Trustee, however, notified the Court that the Bankruptcy Court made such an order. On March 3, 2021, the Bankruptcy Court memorialized its verbal order from the February 25, 2021 hearing, made on the Bankruptcy Court's own motion in response to this Court's suggestion and without objection by the Trustee. The Bankruptcy Court ordered "that if the Trustee recovers funds from the HSBC entities listed in the Forms as a result of Debtor signing the Forms, those funds must be transferred to the Clerk of the court pending a determination of the extent to which those funds are property of the bankruptcy estate and until further order of the court." *In re Szanto*, 3:16-bk-33185-pcm, ECF 1100 (Order, March 3, 2021). Thus, Szanto cannot show imminent, irreparable harm.

Szanto also argues that he will suffer irreparable harm because the Trustee included the HSBC Australia account in the authorization form submitted with the Third Contempt Order by "sneaking" it in despite the Bankruptcy Court only ordering Szanto to sign forms related to the HSBC Singapore account. This assertion is factually inaccurate. The authorization form is the same form Szanto has been ordered to sign by the Bankruptcy Court in the First, Second, and Third Contempt Orders. The Bankruptcy Court referenced the authorization form as being directed to "HSBC Bank" because that is the first entity listed on the form, but the same four

entities, including HSBC Australia, have always been listed on the form. Because Szanto fails to show irreparable harm, the Court does not reach the other factors.

## CONCLUSION

Appellant's fourth motion for temporary restraining order (ECF 17 filed in 3:21-cv-417-SI) is DENIED.

**IT IS SO ORDERED.**

DATED this 7th day of May, 2021.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge